MOUND COTTON WOLLAN & GREENGRASS LLP

COUNSELLORS AT LAW

ONE NEW YORK PLAZA
NEW YORK, NY 10004-1901

(212) 804-4200

FAX (212) 344-8066

WWW.MOUNDCOTTON.COM

NEW YORK, NY
FLORHAM PARK, NJ
GARDEN CITY, NY
FORT LAUDERDALE, FL
SAN FRANCISCO, CA

JEFFREY S. WEINSTEIN
(212) 804-4226
JWeinstein@moundcotton.com

December 18, 2018

**VIA ECF AND FAX**

Honorable Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, New York 10007

>  Re: *Starr Surplus Lines Insurance Company and Houston Casualty Company v. CRF Frozen Foods, LLC*
>  Civil Action No.: 17-cv-1030 (PGG)
>  Our File No.: 3351.63

Dear Judge Gardephe:

      We represent Plaintiff Houston Casualty Company ("HCC"). In accordance with Rule 4A of Your Honor's Individual Practice Rules, HCC respectfully requests permission to file a motion for summary judgment on the limited issue of rescission of the excess Contaminated Products Insurance policy issued by HCC to CRF (the "Excess Policy"). The Excess Policy was procured in October 2015, several months after CRF's primary policy renewed, to provide additional coverage for "accidental contamination" of the Insured's products. It is excess to the policy issued by co-Plaintiff Starr Surplus Lines Insurance Company, which was effective as of May 15, 2015. As Your Honor may recall, this case has been phased in order to address Plaintiffs' claims for rescission first. On July 26, 2017, Your Honor ruled, in response to Plaintiffs' application, that discovery and any dispositive motions in the first phase of the case would be limited to the issue of rescission. As fact and expert discovery on the issue of rescission has concluded, HCC now seeks permission to file a motion for summary judgment. It is our understanding that co-Plaintiff Starr Surplus Lines Insurance Company and Defendant CRF Frozen Foods, LLC also intend to request the Court's permission to move for summary judgment. The requested motion is not on consent, however, as CRF does not consent to summary judgment on the issue of Policy rescission.

      HCC is entitled, as a matter of law, to rescind the Policy because the evidence developed through discovery conclusively establishes that CRF misrepresented material facts in its application for insurance. Specifically, CRF failed to disclose the persistent, ongoing contamination of CRF's processing facility and frozen vegetable food products with the pathogen *Listeria monocytogenes* ("LM"), despite being asked for such information in the

MOUND COTTON WOLLAN & GREENGRASS LLP

Honorable Paul G. Gardephe
December 18, 2018
Page 2

application. LM is a dangerous pathogen that can cause sickness and even death, particularly in vulnerable populations, such as the very young and the elderly.

In order to prove its case for rescission, HCC must show "the existence of a misrepresentation in the procurement process and the materiality of that misrepresentation…" Cont'l Cas. Co. v. Marshall Granger & Co., LLP, 6 F. Supp. 3d 380, 390 (S.D.N.Y. 2014), aff'd sub nom. Cont'l Cas. Co. v. Boughton, 695 F. App'x 596 (2d Cir. 2017). Rescission is appropriate even where the insured unknowingly made the misrepresentation. New York law is clear that "the insurer need not show that the misrepresentation was knowingly made since even an innocent misrepresentation is sufficient to allow a rescission of the contract." Cohen v. Mut. Ben. Life Ins. Co., 638 F. Supp. 695, 697 (E.D.N.Y. 1986). Chief Magistrate Judge Freeman recently addressed the "materiality" standard in Travelers Cas. & Sur. Co. v. Gold, Scollar, Moshan, PLLC, No. 14-CV-10106, 2018 WL 1508573, *7 (S.D.N.Y. Mar. 14, 2018) (Freeman, M.J.) (granting insurer's motion for summary judgment on rescission of the policy). A misrepresentation is "material" where "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." Id. HCC seeks permission to move for summary judgment on the limited issue of rescission. Such issue can be, and is often, decided by courts as a matter of law. Id.; Friedman v. Prudential Life Ins. Co., 589 F. Supp. 1017, 1026 (S.D.N.Y. 1984) (granting rescission of an insurance policy on summary judgment).

In its application for insurance, CRF misrepresented that it had a serious and persistent problem with LM. This problem became more acute just prior to CRF obtaining the Excess Policy from HCC in October 2015. Notably, and compellingly, the HCC Excess Policy was purchased to provide CRF with an *additional* $10 million in Contaminated Products coverage, doubling the limits CRF had with Starr since April 2015, and in the several years prior.

The uncontroverted evidence shows that tests conducted on CRF's finished frozen vegetable products consistently showed the presence of LM in the months (and years) leading up to CRF obtaining the additional $10 million in excess insurance from HCC.[1] Further, CRF admits that it regularly sold food that tested positive for LM, and it distributed that product into the marketplace for years prior to and in the very months leading up to CRF's purchase of the HCC Excess Policy. Additionally, the evidence shows that test swabs taken from CRF's processing facility regularly came back positive for LM during the period in question. In fact, less than one month before HCC issued the Excess Policy, CRF was advised by the outside laboratory that it used to test its finished product for pathogens that the laboratory had "great concern" about CRF's contamination problems and warned CRF that it had "a significant failure event." Yet, CRF proceeded to obtain an additional $10 million in excess coverage from HCC, without notifying HCC of these circumstances.

---

[1] The tests are positive for LM or show an IEH PCT score above 9, which indicates the presence of a pathogen.

MOUND COTTON WOLLAN & GREENGRASS LLP

Honorable Paul G. Gardephe
December 18, 2018
Page 3

It is undisputed that LM is a dangerous food contaminant that is extremely difficult to eradicate, and that LM contamination is a common cause of food recalls, such as this one. In fact, contaminations and recalls are the very types of events for which the HCC Policy provides coverage. Yet, despite its regular practice of selling LM positive food, and despite the ongoing positive tests for LM in its finished products and in its processing facility, CRF answered "No" on the insurance application submitted to HCC when asked if had knowledge of any facts that could give rise to an incident or claim under the Policy. Moreover, on October 16, 2015, prior to issuing the Excess Policy, HCC directly asked CRF if it was aware of any circumstances that could lead to a claim. CRF responded through its broker that it was unaware of any issues at the time. Only a short time later, in April 2016, CRF was forced to conduct a massive recall of its frozen vegetable products because they were contaminated with LM.

CRF's misrepresentation was a "material misrepresentation" because, had it known the truth about the LM contamination, HCC would not have issued the Policy with its current terms, if at all. In fact, there were other terms or limitations that could have been implemented on the Excess Policy if HCC would have decided to take on the risk, but none of those measures was possible because HCC was never told about this critical aspect of the risk. The determination of "materiality" of a misrepresentation can be made by the Court as a matter of law, based on the undisputed facts. "Where the facts misrepresented are so serious that one would know them to be of substantial concern to the insurer, they may be found to be material as a matter of law." Friedman at 1026; see also Travelers at *9.

Because CRF made a material misrepresentation to HCC in its application for insurance, HCC is entitled to rescind the Policy. The uncontroverted evidence developed during discovery establishes that HCC is entitled to rescission as a matter of law. For these reasons, HCC respectfully requests permission to move for summary judgment. If the Court permits HCC's and the other parties motions to be made, we will work with counsel for the other parties to propose a briefing schedule.

Thank you for your consideration of this request.

Respectfully submitted,

MOUND COTTON WOLLAN
& GREENGRASS LLP


By:  /s/ Jeffrey S. Weinstein
     Jeffrey S. Weinstein

JSW:cer

cc:   All counsel of record via ECF