# ANDERSON KILL P.C.

Attorneys and Counselors at Law

ONE GATEWAY CENTER, SUITE 1510 ■ NEWARK, NJ 07102
TELEPHONE: 973-642-5858 ■ FAX:  973-621-6361
www.andersonkill.com

Steven J. Pudell, Esq.
SPudell@andersonkill.com
973-642-5877

*Via ECF and Fax*                                                        December 18, 2018

Honorable Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, NY 10007

      Re:    ***Starr Surplus Lines Insurance Company and Houston Casualty Company v. CRF Frozen Foods, LLC***
            **Civil Action No. 17-cv-1030 (PGG)**

Dear Judge Gardephe,

      This firm is co-counsel representing CRF Frozen Foods, LLC ("CRF") in the above-referenced action.  The parties have recently completed both fact and expert discovery and CRF believes that this matter is ripe for summary judgment on Phase I, which is limited to the insurance companies' claim for rescission.  Pursuant to Your Honor's Individual Rules of Practice, CRF submits this letter in support of CRF's request for a pre-motion conference. It is CRF's understanding that the insurance companies, Starr Surplus Lines Insurance Company ("Starr") and Houston Casualty Company ("HCC") (together, the "Insurers"), also will request permission to seek summary judgment on rescission.[1]

      On July 26, 2017, this Court granted the Insurers' request to bifurcate this matter, limiting Phase I to the Insurers' claim for rescission and "whether [CRF] made material misrepresentations of fact or omissions in its insurance applications and, if so, whether [Starr and HCC] relied on these material misrepresentations or omissions in agreeing to provide insurance coverage to [CRF]."  (ECF No. 89, at 1).  This Court held that Phase II "would address, *inter alia*, the application of the insurance policies to losses sustained by CRF in connection with the recall." (*Id.*).

      By way of factual background, CRF seeks $10 million of insurance coverage from each of its insurance companies, for a total of $20 million, following a 2016 recall

---

[1]  Should this Court be inclined to allow the parties' cross-motions for summary judgment on Phase I to proceed, CRF would request that the pre-motion hearing be waived and the parties be permitted to submit a joint proposed scheduling order.

New York, NY ■ Los Angeles, CA ■ Stamford, CT ■ Washington, DC ■ Newark, NJ ■ Philadelphia, PA

**Anderson Kill P.C.**

Hon. Paul G. Gardephe, U.S.D.J.
December 18, 2018
Page 2

of CRF's frozen vegetables found to contain *Listeria monocytogenes* ("LM") (hereinafter the "2016 Recall"). CRF suffered well-over $80 million of damage directly caused by the 2016 Recall. Despite the fact that the 2016 Recall is a covered claim, Starr and HCC have both refused to pay their limits. In light of the tremendous loss that CRF experienced, and the Insurers' failure to pay a clearly covered claim, CRF's business has not reopened since the 2016 Recall. Instead of fulfilling their duties to their policyholder, Starr and HCC sued CRF and seek, among other things, rescission of their respective policies. In response, CRF brought counterclaims, which will be addressed in Phase II. With respect to Phase I, Starr and HCC have wrongly accused CRF of lying on the Starr insurance applications.

CRF bought insurance policies from Starr in 2013, 2014, and 2015 that cover recalls, such as the one CRF experienced (collectively, the "Starr Policies"). CRF bought an excess insurance policy from HCC in 2015 that would provide coverage upon exhaustion of the Starr 2015-2016 Policy (the "HCC Policy") (collectively, with the Starr Policies, "the Insurance Policies"). As the Insurance Policies are "claims made" policies, CRF is only seeking coverage under the 2015 Starr Policy and the HCC Policy, which were the policies in effect when the 2016 Recall occurred.

All three applications that CRF completed in 2013, 2014, and 2015 for the Starr Policies were substantially similar.[2] Specifically, Question 31 on all three of the applications asked, with very minor differences, "[d]oes the company have any knowledge or information of any specific facts, which may give rise to an incident and/or claim or know of any incident that would result in a claim if insurance had been in place?" The record demonstrates that CRF accurately answered this question "no" in all three applications – reflecting its belief that CRF would not have an insurance claim in the particular policy period, or be subject to a recall during that time. The Insurers' claim for rescission requires them to meet their burden of proving that CRF knew these answers were incorrect. The Insurers cannot meet their burden here.

In support of its motion, CRF will show that in response to Question 31, CRF justifiably believed that there would be no claim under the Insurance Policies. For example, the evidence shows, among other things, that: (1) the LM protocol CRF had in place and followed for years (including by its predecessor owner of the plant), had not resulted in any complaints that CRF's product contained LM; (2) CRF did not have a recall of its frozen vegetable products prior to the 2016 Recall; (3) prior to the 2016 Recall, no customer ever advised CRF that CRF's product contained LM; (4) CRF's plant was subject to vigorous governmental inspections, none of which advised CRF of a specific concern regarding LM; and, (5) the frozen vegetable products manufactured

---

[2]  HCC never sent an application to CRF for completion prior to selling the HCC Policy. HCC testified that it relied upon the 2015-2016 Starr application.

100078924.4

Hon. Paul G. Gardephe, U.S.D.J.
December 18, 2018
Page 3

by CRF were *not* ready to eat products, rather they were "ready to cook", which means the product would be subjected to one or more "kill steps" after it left CRF's control.

There is no evidence that CRF knew there would be a recall resulting from its operations at the plant in Pasco, Washington. Given the lack of record evidence, the Insurers will simply be attempting to rely on – at most – a series of legally insufficient inferences to raise a triable issue. CRF will demonstrate that the Insurers' approach is, under the law, insufficient. Accordingly, there are no genuine issues of material fact preventing summary judgment from being entered in CRF's favor as to rescission.

There are several propositions of New York law that require judgment for CRF in Phase I.

First, under New York law, an insurance company cannot cause its policyholder to forfeit its insurance coverage based on an alleged material misrepresentation unless the insurance company presents "documentation concerning its underwriting practices, such as underwriting manuals, bulletins or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application." *Curanovic v. N.Y. Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 762 N.Y.S.2d 148, 151 (3d Dep't 2003). Under New York law, an insurance company may only void an insurance contract if the contract was induced by an insured's material misrepresentation of a past or present fact. N.Y. Ins. L. § 3105(a) (McKinney 2000). Starr cannot point to any documentation that establishes it would not have issued the Starr Policies to CRF had it known about the existence of LM at CRF's plant. Starr has no underwriting guidelines or manuals that apply to this situation. To that end, HCC does not have *any* written guidelines whatsoever.

Second, Question 31 on the three Starr applications is a *subjective* question calling for CRF's belief. The Court in *Chicago Ins. Co. v. Halcond*, 49 F. Supp. 2d 312, 317 (S.D.N.Y. 1999)(Kaplan, U.S.D.J.) specifically explained that this exact application question calls for the policyholder's subjective belief. Therefore, CRF's response on the applications in 2013, 2014, and 2015, that it did not believe there would be a "claim", including a "recall", under the policy, truthfully portrayed CRF's mental state. Starr and HCC can point to no evidence, in testimony or otherwise, that this question was answered untruthfully. In fact, "[w]hen the insurer's questions call for the applicant's opinion", as did Question 31 here, "the applicant's response is a misrepresentation only if 'the applicant has not truthfully portrayed his or her mental state.'" *United National Ins. Co. v. Granoff, Walker & Forlenza*, 598 F. Supp. 2d 540, 547 (S.D.N.Y. 2009) (citations omitted).

To that end, the Insurers have the burden to prove that CRF lacked a "justifiable belief" that its response on the applications were accurate. *Halcond*, 49 F. Supp. 2d at 317. Neither insurance company can satisfy this burden because there is not a single piece of evidence to the contrary. The testimony on the record is uncontroverted. The

**Anderson Kill P.C.**

Hon. Paul G. Gardephe, U.S.D.J.
December 18, 2018
Page 4

CRF witnesses testified that they believed that the company had a sound protocol for both (i) testing for *Listeria monocytogenes*, and (ii) reacting to any positive testing for LM. These protocols were put in place by CRF's predecessor company, Bybee Foods, Inc. ("Bybee") and remained in place after CRF's purchase of Bybee in 2013. As explained, under these protocols CRF did not have a recall or claims of bodily injury against CRF from LM until April 2016. Moreover, frozen vegetables have long been considered by the FDA as "ready to cook" or "not ready to eat foods" ("NTRE"). CRF, as well as other companies, one of which made an insurance claim to Starr prior to CRF's recall, relied upon customer "kill steps" in managing LM. The FDA did not (and does not) require testing for LM of NRTE foods.

Third, Starr and HCC have now, in a post-loss effort to avoid their coverage obligations, accused CRF of not being truthful on the applications and "failed to disclose" information. Information, notably, that Starr and HCC never asked for. Under New York law, "nondisclosure of a fact concerning which the applicant has not been asked does not ordinarily void an insurance policy absent an intent to defraud." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 117-18 (2nd Cir. 1999). "An applicant is ordinarily permitted to remain silent on matters concerning which he is not questioned. His insurance policy may be voided for concealment only when he conceals matters material to the risk and he does so in bad faith with intent to deceive the insurer." *Id*. The Insurers complain that they did not receive LM testing results, yet neither Starr nor HCC ever asked for such information. In fact, other insurance applications used by Starr for other policyholders included questions asking specifically for such information. However, the applications used by Starr for CRF did not. HCC never sent CRF a written application, but rather relied upon Starr's application, which, as noted above, never asked for LM or any other testing results. Starr and HCC could have asked for all testing results, or asked merely if there was ever LM found at the plant. Starr and HCC failed to do either. Moreover, CRF answered the application questions posed to it accurately and honestly. As such, Starr and HCC have wrongfully denied coverage, and in so doing caused significant damage to CRF.

Based on the foregoing, CRF is entitled to summary judgment on Phase I. By requesting summary judgment be granted in CRF's favor, CRF is not waiving its right to oppose, as appropriate, the Insurers' motion for summary judgment. CRF reserves its rights to contest the Insurers' positions. CRF further reserves its right, without limitation, to argue that the Insurers' positions are contrary to the law and/or that there are material fact questions precluding summary judgment as requested by the Insurers, depending on the content of Starr and HCC's motions.

We thank Your Honor for your consideration in this matter.[3]

---

[3] As set forth in the joint letter to the Court dated November 30, 2018, (ECF No. 134), to the extent that the Court allows the requested motion to proceed, CRF reiterates the

100078924.4

**Anderson Kill P.C.**

Hon. Paul G. Gardephe, U.S.D.J.
December 18, 2018
Page 5

                                                Respectfully submitted,

                                                /s/ Steven Pudell
                                                Steven J. Pudell

cc:    *All Counsel of record via ECF*

---

joint request to allow the parties to submit a proposed scheduling order for the respective summary judgment motions.