### MOUND COTTON WOLLAN & GREENGRASS LLP

COUNSELLORS AT LAW

ONE NEW YORK PLAZA

NEW YORK, NY 10004-1901

(212) 804-4200

FAX (212) 344-8066

WWW.MOUNDCOTTON.COM

NEW YORK, NY
FLORHAM PARK, NJ
GARDEN CITY, NY
FORT LAUDERDALE, FL
SAN FRANCISCO, CA

JEFFREY S. WEINSTEIN
(212) 804-4226
JWeinstein@moundcotton.com

December 21, 2018

**VIA ECF AND FAX**

Honorable Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, New York 10007

      Re:   *Starr Surplus Lines Insurance Company and Houston Casualty Company v. CRF Frozen Foods, LLC*
            Civil Action No.: 17-cv-1030 (PGG)
            Our File No.: 3351.63

Dear Judge Gardephe:

      We represent Plaintiff Houston Casualty Company ("HCC"), and write in accordance with Rule 4A of Your Honor's Individual Practice Rules, to set forth HCC's response to Defendant's letter requesting a pre-motion conference on summary judgment (Dkt. No. 140). It is HCC's position that Defendant CRF Frozen Foods, LLC ("CRF") should not be granted permission to move for summary judgment because it has not articulated in its letter any legal basis on which it could be entitled to such relief. Rather, CRF's arguments and the case law cited within its letter primarily focus on CRF's position that HCC and co-Plaintiff Starr Surplus Lines Insurance Company are not entitled to summary judgment.

      CRF confuses HCC's burden of proof on its *prima facie* case with the standard for prevailing on summary judgment. For example, CRF cites to <u>Curanovic v. N.Y. Cent. Mut. Fire Ins. Co.</u>, 307 A.D.2d 435 (3d Dep't 2003) for the proposition that HCC cannot succeed on its rescission claim because it does not have underwriting guidelines to corroborate its underwriter's testimony that, had CRF disclosed the ongoing *Listeria monocytogenes* ("LM") contamination of CRF's frozen vegetable products and of its processing facility in the application for insurance (the "Application"), it would not have issued the excess Contaminated Products Insurance policy to CRF (the "Excess Policy").[1] But <u>Curanovic</u> only addresses the evidence necessary for an insurer to prove "materiality" as a matter of law on summary judgment. That case provides no support to CRF's claim that it is entitled to summary judgment dismissing HCC's cause of action for rescission.

---

[1] HCC's underwriter will testify that he would not have issued the Excess Policy with its current terms, if at all.

794204.1

MOUND COTTON WOLLAN & GREENGRASS LLP

Honorable Paul G. Gardephe
December 21, 2018
Page 2

      Contrary to CRF's position in its letter, HCC *has* produced documentation demonstrating that it would not have issued the policy to CRF had it known the truth about the LM contamination. Specifically, HCC produced applications and underwriting files for prospective insureds with issues similar to those faced by CRF. In Curanovic, the court held that evidence of "specific applicants with similar histories" is a sufficient type of corroborating evidence to permit the court to make a finding materiality as a matter of law on a motion for summary judgment. Id. at 438. If granted permission to make its motion for summary judgment, HCC intends to rely on such files as evidence of the "materiality" of CRF's misrepresentation in the Application.

      CRF's attempt to fashion an argument that it is entitled to a ruling, as a matter of law, that it did not make a misrepresentation in the Application, falls flat. The discussion in CRF's letter about its alleged "sound" testing protocols, whether frozen vegetables are considered "ready to eat," and that the Application did not specifically ask for LM test results, is an attempt to distract from the fact that CRF answered "No" in response to question 31 on the Application, which asked whether CRF had "knowledge or information of any specific facts, which may give rise to an incident and/or claim," or knew of "any incident that would result in a claim if insurance had been in place." The Policy is triggered by the contamination of an insured product, and thus, LM contamination of CRF's finished products is precisely an "incident that would result in a claim if insurance had been in place" as well as a fact "which may give rise to an incident and/or claim" under the Policy.

      There is substantial evidence that CRF had a serious LM contamination problem when it submitted the Application to HCC. One email is particularly compelling evidence. In an email sent on September 24, 2015, three weeks before CRF obtained the Excess Policy from HCC, Emily Camp, CRF's Director of Quality Systems and the CRF employee who signed the Application, stated that "this year's corn has not passed on IEH test . . . it is full of Lm and I am not going to take the risk that something goes wrong . . . and it kills a baby."

      As Chief Magistrate Judge Freeman recently explained, "[k]nowledge of whether a particular act may give rise to a claim covered by an insurance policy is determined first by assessing whether the insured had subjective knowledge of the relevant facts, and then by asking whether a reasonable person in the insured's position would foresee that those facts might be the basis of a claim." Travelers Cas. & Sur. Co. v. Gold, Scollar, Moshan, PLLC, No. 14-CV-10106, 2018 WL 1508573, *7 (S.D.N.Y. Mar. 14, 2018) (Freeman, M.J.) (internal citations omitted). Despite CRF's contention that CRF did not subjectively believe that the ongoing LM contamination might lead to an incident or claim, a "reasonable person" in CRF's position certainly would have that belief.

      Finally, HCC finds it necessary to respond to CRF's improper statement that HCC has "accused CRF of *lying*" (emphasis added) on the Application. HCC has not, and does not need to, contend that CRF intentionally misrepresented facts. An "insurer need not show that the

794204.1

MOUND COTTON WOLLAN & GREENGRASS LLP

Honorable Paul G. Gardephe
December 21, 2018
Page 3

misrepresentation was knowingly made since even an innocent misrepresentation is sufficient to allow a rescission of the contract." Cohen v. Mut. Ben. Life Ins. Co., 638 F. Supp. 695, 697 (E.D.N.Y. 1986). Intent is not an element of a rescission claim under New York law, as even innocent misrepresentations are grounds for rescission.

   For the foregoing reasons, CRF has not set forth in its pre-motion letter any basis on which it could be entitled to dismiss HCC's rescission claim as a matter of law, and therefore, CRF's request to make a motion for summary judgment should be denied.

               Respectfully submitted,

               MOUND COTTON WOLLAN
               & GREENGRASS LLP


               By: /s/ Jeffrey S. Weinstein
                 Jeffrey S. Weinstein

JSW:cer

cc: All counsel of record via ECF

794204.1