# CHOATE

Robert A. Kole
t 617-248-2121
f 617-248-4000
rkole@choate.com

December 21, 2018

Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, New York 10007

      Re:    *Starr Surplus Lines Ins. Co. and Houston Cas. Co. v. CRF Frozen Foods, LLC*
            Case No. 1:17-cv-01030-PGG

Dear Judge Gardephe:

      Starr Surplus Lines Insurance Co. ("Starr") writes in response to the letter submitted by CRF Frozen Foods, LLC ("CRF") on December 18, 2018, in which CRF requested a pre-motion conference addressing dispositive motions in Phase 1 of the above-referenced matter. On the same day, Starr and Houston Casualty Company ("HCC") submitted letters in which they also requested a pre-motion conference addressing the same subject matter. Accordingly, the parties' respective letters indicate that they are in agreement as to the proper next step in this litigation -- summary judgment practice on Phase 1 issues. In fact, after receipt of each other's letters, the parties conferred and, without waiving their factual and legal arguments, expressly agreed that their respective summary judgment motions should be briefed, heard, and considered by the Court. Accordingly, Starr respectfully requests that the Court either: (1) grant the parties' request for a pre-motion conference, if that is the Court's preferred approach; or (2) order the parties to submit a proposed summary judgment briefing schedule, which the parties can do in short order.

      Because the parties are in agreement as to how this litigation should proceed, Starr does not intend to respond to all of the arguments contained in CRF's letter of December 18, 2018. Those arguments can and will be addressed in summary judgment practice, with the Court's approval. However, out of an abundance of caution, Starr feels constrained to correct certain factual and legal misstatements contained in CRF's letter.

      First, CRF contends that "Starr has no underwriting guidelines or manuals that apply to this situation." ECF 140 at 3. In fact, Starr produced -- and CRF questioned each of Starr's witnesses about -- Starr's "*Contaminated Products Insurance Underwriting Guidelines*." It is undisputed that Starr's underwriter utilized Starr's rating model, as required by the Underwriting Guidelines, when underwriting the CRF policies. Thus, CRF's statement regarding Starr's purported lack of underwriting guidelines is both false and easily refuted.

December 21, 2018
Page 2

Second, CRF asserts that it "bought insurance policies from Starr in 2013, 2014 and 2015 that cover recalls[.]" ECF No. 140 at 2. The Starr policies cover more than product recalls; they also cover accidental contamination of insured products, malicious product tampering and insured product extortion. In fact, accidental contamination is the first insured event listed in the policies, before government recall. CRF's material misstatements in its insurance applications must be considered in connection with the actual insurance policies that it purchased, rather than a more limited policy covering only product recalls.

Third, CRF asserts that "other insurance applications used by Starr for other policyholders included questions asking specifically for such information [i.e. testing results for *Listeria monocytogenes* ("LM")]." ECF No. 140 at 4. In fact, Starr is unaware of any application that specifically requested the results of an applicant's LM testing, where the applicant (like CRF) did not disclose prior contamination issues concerning LM.

Fourth, CRF states that "frozen vegetables have long been considered by the FDA as 'ready to cook' or 'not ready to eat.'" ECF No. 140 at 4. In fact, the FDA published draft guidance -- which has been publicly available since 2008 -- explaining that a ready to eat food is a "food that is customarily consumed without cooking by the consumer, or that *reasonably appears to be suitable for consumption without cooking by the consumer.*" (Emphasis added). It is undisputed that consumers may, and do, consume frozen vegetables without cooking. The notion that it is, or was in 2015, somehow acceptable for CRF to ship LM-contaminated frozen vegetables to customers just because some (or even most) of those customers would likely cook them is plainly wrong. Regardless, CRF should have disclosed the information to Starr.

Fifth, CRF suggests that Starr's 2015 Policy cannot be rescinded unless CRF knew "there would be a recall" at the time it signed its insurance applications. ECF No. 140 at 3. That is not what Question 31 says. Rather, Question 31 asked CRF whether the company had "knowledge or information of any specific facts, which may give rise to an incident and/or claim." As set forth in Starr's December 18 letter, CRF's knowledge of "specific facts" concerning LM contamination in both its facility and in its finished products should have caused CRF to answer "yes" to Question 31. CRF instead answered "no," and provided Starr with no information about its LM contamination history before purchasing contamination insurance from Starr.

Sixth, CRF misstates the standard for establishing a misrepresentation under governing New York law. CRF argues that the test is subjective, and that CRF must establish that its answer to Question 31 "truthfully portrayed CRF's mental state." ECF No. 140 at 3. New York law is to the contrary. *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Gold, Scollar, Moshan, PLLC*, No. 14-cv-10106, 2018 U.S. Dist. LEXIS 46568, at *20-21 (S.D.N.Y. Mar. 14, 2018) ("Knowledge of whether a particular act may give rise to a claim covered by an insurance policy is determined first by assessing whether the insured had subjective knowledge of the relevant facts, and then by asking whether a reasonable person in the insured's position would foresee that those facts might be the basis of a claim.") (Freeman, M.J.) (internal citations and quotations omitted).

Finally, CRF misstates the requirements for demonstrating materiality under New York law. In its letter, CRF argues that it is entitled to summary judgment because Starr purportedly cannot "point to any documentation" showing that it would not have issued the 2015 Policy to

December 21, 2018
Page 3

CRF had it known the truth about CRF's LM contamination history. ECF No. 140 at 3. As set forth above, the factual predicate of CRF's argument -- that Starr lacked written documentation in the form of underwriting guidelines -- is wrong. Moreover, under New York law, a lack of documentary evidence may weigh against an affirmative finding of materiality a*s a matter of law*, but would not support an argument that CRF is entitled to summary judgment because of a lack of materiality. Stated differently, a lack of documentation (if there was any) might be relevant to -- although by no means dispositive of[1] -- whether Starr could obtain summary judgment *in its favor*; in no way would it support CRF's entitlement to summary judgment. To the contrary, the unrefuted testimony of Starr's underwriters is sufficient by itself to defeat CRF's summary judgment motion as to materiality. *See Banco Bradesco S.A. v. Steadfast Ins. Co.*, 2018 U.S. Dist. LEXIS 152688, at *19 (S.D.N.Y. Sept. 7, 2018) ("The cases cited by Petitioner in support of the proposition that mere testimony by an underwriter is not sufficient to prove materiality under New York law are cases involving motions for summary judgment …. Consistent with obtaining rescission of an insurance policy in the context of a summary judgment motion, Petitioner's cases consider an insurer's burden of showing materiality *as a matter of law*, not as a matter of fact.") (emphasis in original)*; see also Curanovic v. N.Y. Cent. Mut. Fire. Ins.*, 307 A.D.2d 435, 437 (App. Div. 2003) (on appeal from a summary judgment order, explaining that "[t]o establish materiality of misrepresentations *as a matter of law*, the insurer must present documentation concerning its underwriting practices . . . .") (emphasis added).

In sum, as detailed in Starr's letter dated December 18, 2018, Starr believes that it is entitled to summary judgment on its Phase 1 rescission claim. If the Court permits the parties to proceed with summary judgment motion practice, Starr will more fully demonstrate that CRF's above contentions, and many others, are squarely at odds with the undisputed evidence and New York law. Moreover, even if the Court does not grant summary judgment in Starr's favor, the record is clear that the facts (both undisputed and disputed) and governing law do not support summary judgment in CRF's favor.

Accordingly, for the reasons set forth above, and in its letter dated December 18, 2018, Starr respectfully reiterates its request for a pre-motion conference. If the Court is inclined to allow the parties, per their request, to proceed to summary judgment practice without the need for a pre-motion conference, Starr will promptly consult with the other parties and propose a briefing schedule.

---

[1] Decisions from this District have found materiality at the summary judgment stage based solely on the testimony of an underwriter. *See Travelers*, 2018 U.S. Dist. LEXIS 46568, at *26; *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 392 (S.D.N.Y. 2014), *aff'd sub nom. Cont'l Cas. Co. v. Boughton*, 695 F. App'x 596 (2d Cir. 2017).

December 21, 2018
Page 4


STARR SURPLUS LINES INSURANCE COMPANY,

By its attorneys,

/s/ Robert A. Kole
Robert A. Kole (admitted *pro hac vice*)
Matthew B. Arnould (admitted *pro hac vice*)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000
rkole@choate.com
marnould@choate.com
*Counsel for Starr Surplus Lines Insurance Company*